In the Matter of Employees of Student Services, Inc., Edinboro State College, Edinboro, Pennsylvania.

Employees of Student Services, Inc., Edinboro State College, Edinboro, Pennsylvania, Appellants.

Argued December 4, 1979, before Judges CRUMLISH JR., MENCER, DISALLE, CRAIG and MACPHAIL.

*Angelo P. Arduini,* of *Shamp, Levin, Arduini & Hain,* for appellants.

*Christopher LePore,* with him *James L. Crawford, Susan Shinkman, Anthony C. Busillo, Mary T. Gavigan,* Assistant Attorneys General, *Daniel W. Cooper,* of *Cooper, LePore & Dreeland,* for appellee.

OPINION BY JUDGE MENCER, October 7, 1981:

Student Services, Inc. (employer) is a nonprofit corporation organized for the purpose of operating a bookstore, bowling alley, vending machines, and other services at Edinboro State College. On December 6, 1974, the Retail Clerks Union, Local 1538 (union), filed a petition for representation with the Pennsylvania Labor Relations Board (Board) and requested an election. When the union prevailed at the election, the Board entered an order certifying the union as the collective bargaining representative. The Court of Common Pleas of Erie County affirmed the Board's order. We reversed the lower court in *Employees of Student Services, Inc. Appeal*, 49 Pa. Commonwealth Ct. 220, 411 A.2d 569 (1980), where we ruled that the employer was not a public employer within the meaning of the Public Employe Relations Act (PERA),[1] and the Board therefore lacked jurisdiction to entertain the union's petition for representation. The Supreme Court of Pennsylvania then reversed our decision and remanded the case for resolution of the issues not previously considered in view of our holding.[2] Pursuant to the remand now before us, we affirm the court below.

The first issue remaining for our resolution is whether the National Labor Relations Board (NLRB) is vested with exclusive jurisdiction to consider the petition for representation, as the employer contends. In support of its position, the employer cites *Guss v. Utah Labor Relations Board*, 353 U.S. 1 (1957), where the United States Supreme Court held that the states did not acquire jurisdiction in labor relations matters

---

[1] Act of July 23, 1970, P.L. 563, *as amended*, 43 P.S. §§1101.101-.2301.

[2] *In re Employees of Student Services, Inc.*,    Pa.    , 432 A.2d 189 (1981).

affecting interstate commerce where the NLRB had declined to exercise its jurisdiction, unless the NLRB affirmatively "ceded" its jurisdiction to the states under Section 10(a) of the National Labor Relations Act (NLRA), 29 U.S.C. §160(a).[3] The employer asserts that, since the NLRB has not ceded the jurisdiction that it statutorily could assert over the parties, the Pennsylvania Board is therefore powerless to act on the petition. The employer, however, overlooks that Section 10(a) is no longer applicable to these jurisdictional disputes because of Section 14(c), the 1959 Landrum-Griffin Amendment to the NLRA, 29 U.S.C. §164, which provides that states may take jurisdiction of labor disputes over which the NLRB has declined to assert jurisdiction.[4] The NLRB is thus no longer

---

[3] Section 10(a) of the NLRA provides as follows:

(a) The Board is empowered, as hereinafter provided, to prevent any person from engaging in any unfair labor practice (listed in section 158 of this title) affecting commerce. This power shall not be affected by any other means of adjustment or prevention that has been or may be established by agreement, law or otherwise: *Provided*, That the Board is empowered by agreement with any agency of any State or Territory to cede to such agency jursidiction over any cases in any industry (other than mining, manufacturing, communications, and transportation except where predominantly local in character) even though such cases may involve labor disputes affecting commerce, unless the provision of the State or Territorial statute applicable to the determination of such cases by such agency is inconsistent with the corresponding provision of this subchapter or has received a construction inconsistent therewith.

[4] Section 14(c) of the NLRA provides as folows:

(c)(1) The Board, in its discretion, may, by rule of decision or by published rules adopted pursuant to subchapter II of chapter 5 of Title 5, decline to assert jurisdiction over any labor dispute involving any class or category of employers, where, in the opinion of the Board, the effect of such labor dispute on commerce is not sufficiently

required to make a formal relinquishment of jurisdiction in order for the states to acquire the power to adjudicate a labor dispute.

The issue then becomes whether the NLRB has declined to exercise jurisdiction over the type of employer involved here. We are satisfied that it has. The NLRB repeatedly has declined jurisdiction over enterprises "intimately connected" with an exempt employer. For example, in *Prophet Co.*, 150 N.L.R.B. 1559, 58 L.R.R.M. 1310 (1965), the NLRB declined to assert jurisdiction over a food service corporation operating at Whitewater State University in Wisconsin, on the basis that the food service operation was intimately tied to the educational purposes of the exempt university. In *Horn & Hardart Co.*, 154 N.L.R.B. 1368, 60 L.R.R.M. 1138 (1965), the NLRB similarly refused to assume jurisdiction over an employer that operated a cafeteria and vending machines at an exempt hospital, concluding that the food service operations performed by the employer were "incidental to and intimately connected with the patient care and medical education purposes of the [h]ospital." *See also Wackenhut Corp.*, 203 N.L.R.B. 86, 83 L.R.R.M. 1001 (1973) (NLRB refused to assert jurisdiction over an employer providing guard services to the City College of New York).

---

substantial to warrant the exercise of its jurisdiction: *Provided*, That the Board shall not decline to assert jurisdiction over any labor dispute over which it would assert jurisdiction under the standards prevailing upon August 1, 1959.

(2) Nothing in this subchapter shall be deemed to prevent or bar any agency or the courts of any State or Territory (including the Commonwealth of Puerto Rico, Guam, and the Virgin Islands), from assuming and asserting jurisdiction over labor disputes over which the Board declines, pursuant to paragraph (1) of this subsection, to assert jurisdiction.

In the instant case, the employer likewise is "intimately connected" to Edinboro State College, which, as an instrumentality of the Commonwealth, is exempt from the provisions of the NLRA. The employer operates exclusively for the college in providing services for students not offered by the College. The employer conducts business in buildings owned by the Commonwealth, for which it pays no rent. Furthermore, as in the NLRB cases cited above, the employer is subject to a significant degree of control over its operations by the exempt employer.[5]

The employer next argues that the Board erred by defining the bargaining unit to include student part-time employees. We disagree. The Board specifically determined that the student employees work a regular schedule, in which they perform the same functions as the full-time employees, and that two-thirds of the student employees return each semester. The student employees therefore had a sufficient community of interest with the full-time employees to justify their inclusion in the same bargaining unit. *Albert Einstein Medical Center v. Pennsylvania Labor Relations Board*, 17 Pa. Commonwealth Ct. 91, 330 A.2d 264 (1975).

The employer finally argues that the representation election was unfair since the Board failed to abide by the parties' stipulation as to the date and time of the election, thereby "inconveniencing" a significant number of voters. We find no merit in this argument. Section 605 of PERA, 43 P.S. §1101.605, vests the Board with broad discretion concerning the conduct of an election by providing that "[r]epresentation

---

[5] The record indicates that the board of directors controlling the employer consists of three student members of the college, one member of the board of trustees, the president of the college, the manager of Student Services, Inc., and one faculty member. The manager is also hired and fired by the board of directors.

elections shall be conducted by secret ballot at such times and places selected by the board," subject to certain provisions not relevant here. Therefore, we cannot agree that the Board abused its discretion by disregarding the stipulation of the parties and selecting another appropriate date and time for the election. Furthermore, the record clearly indicates that the employees were given proper and timely notice of the election, and nearly two-thirds of those eligible to vote participated in the election process.

Order affirmed.

### ORDER

AND Now, this 7th day of October, 1981, the order of the Court of Common Pleas of Erie County, dated October 3, 1977, is hereby affirmed.

Judge DiSALLE did not participate in this decision.